IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JANIE A. MILNE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 15-00656-N |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Janie A. Milne has brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability, disability insurance benefits ("DIB"), and widow's insurance benefits ("WIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 30, 31).

Upon consideration of the parties' briefs (Docs. 21, 27) and those portions of the administrative record (Doc. 20) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised,[1] the Court finds that the Commissioner's decision is due to be **REVERSED** and **REMANDED for**

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 29, 32).

**rehearing** under sentence four of § 405(g).

## I.    Background

On March 28, 2012, Milne filed applications for a period of disability, DIB, and WIB with the Social Security Administration ("SSA"),[2] alleging disability beginning December 24, 2008.[3] After her applications were initially denied, Milne requested a hearing before an Administrative Law Judge ("ALJ") for the SSA, which was held on September 27, 2013, with a supplemental hearing held March 21, 2014. On April 24, 2014, the ALJ issued an unfavorable decision on Milne's applications, finding her "not disabled" under the Social Security Act and thus not entitled to benefits.  (*See* R. 13 – 30).  The Commissioner's decision on Milne's applications became final when the Appeals Council denied Milne's request for review of the ALJ's decision on November 5, 2015.  (R. 1 – 6).  On December 29, 2015, Milne filed this action under § 405(g) for judicial review of the Commissioner's final decision. (Doc. 1).  *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such

---

[2] The Social Security Act's general disability insurance benefits program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a).  The Act also provides that the widow of a fully-insured individual is entitled to benefits upon attaining age 60, or upon attaining age 50 but not age 60 if the widow also shows she "is under a disability … which began before the end of" a certain statutorily defined time period.  *See* 42 U.S.C. § 402(e).

[3] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005)."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   Standards of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The court] must scrutinize the record as a whole to determine if the

decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ….' 42 U.S.C.A. s 405(g) (West Supp. 1982) (emphasis added). As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (footnote and some

citations and quotation marks omitted)).  This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260  (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).  *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB … requires that the claimant be disabled. 42 U.S.C. §[] 423(a)(1)(E) … A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §[] 423(d)(1)(A) …

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]   As Milne has not yet attained age 60, she was also

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they

required to show disability to qualify for WIB.  *See* 42 U.S.C. § 402(e).[5]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in

---

may be cited as persuasive authority." 11th Cir. R. 36-2.  *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The ALJ determined that Milne "met the non-disability requirements for" WIB.  (R. 18).

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

combination.  Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).  Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record."  *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).  *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record.  Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)).  "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.  In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied

review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

## III.   <u>Analysis</u>

At Step One, the ALJ determined that Milne had not engaged in substantial gainful activity since the alleged disability onset date, December 24, 2008. (R. 19). At Step Two, the ALJ determined that Milne had the following severe impairments: pes planus of the left foot status post surgery; depressive disorder; anxiety disorder; benzodiazepine and opioid dependence; posttraumatic stress disorder; obesity; lumbosacral facet degenerative joint disease; ventral hernia; and chronic obstructive pulmonary disease. (R. 19). At Step Three, the ALJ found that Milne did not have an impairment or combination of impairments that meets or equals the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 19 – 20).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about

[the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Milne had the RFC "to perform light work as defined in 20 CFR 404.1567(b)[,]"[7] with the following limitations:

She can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk four hours, no more than one hour at a time. She can sit for six hours, no more than one hour at a time. She can frequently push and/or pull with the upper extremities, bilaterally. She can frequently push and/or pull with the right lower extremity. She can occasionally push and/or pull with the left lower

---

[7] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the Commissioner] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b).

extremity.    She  can  occasionally  balance,  occasionally  stoop,
occasionally  kneel,  occasionally  crouch,  occasionally  crawl,  and
occasionally climb ramps and stairs.   She is unable to climb ladders,
ropes  or  scaffolds.    She  can  frequently  reach,  bilaterally;  frequently
handle, bilaterally; frequently finger, bilaterally; and frequently feel,
bilaterally.    She  can  tolerate  occasional  exposure  to  unprotected
heights and avoid all exposure to dangerous machinery.   She cannot
operate motor vehicles.   She is unable to work with very small objects
such as sewing needles and threads.   She can perform simple, routine
tasks involving no more than simple, short one-to-two step instructions
and simple work-related decisions with few work place changes.   She
can  have  tolerate  [sic]  occasional  and  non-transactional  interaction
with the public, occasional interaction with co-workers, and occasional
interaction with supervisors.   She is able to sustain concentration and
attention for two-hour periods with customary breaks.

(R. 20 – 21).

Based on this RFC, the ALJ determined that Milne was unable to perform
any past relevant work.  (R. 28).  At Step Five, the ALJ, after taking testimony from
a  vocational  expert,  found  that  there  exist  significant  numbers  of  jobs  in  the
national economy that Milne can perform given her RFC, age, education, and work
experience.  (R. 28 – 29).  Thus, the ALJ found that Milne was not disabled under
the Social Security Act.  (R. 29).  Milne's lone claim of error is that the ALJ erred in
assigning  less  than  substantial  or  considerable  weight  to  the  medical  opinion  of
treating physician Dr. Edith G. McCreadie.

Evidence  considered  by  the  Commissioner  in  making  a  disability
determination may include medical opinions.  *See* 20 C.F.R. § 404.1527(a)(2).  "
'Medical  opinions  are  statements  from  physicians  and  psychologists  or  other
acceptable medical sources that reflect judgments about the nature and severity of
[the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and

prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. Sept. 26, 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).

The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *E.g., Bloodsworth*, 703 F.2d at 1240. However,

> the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731,

735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Winschel*, 631 F.3d at 1179.

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502). "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' " *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440). That is so because treating sources are likely in a better position "to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may

disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted).  *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings.  Further, the Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)).  An ALJ's failure to clearly articulate the reasons for giving less weight to the opinion of a treating physician is reversible error.  *Lewis v. Callahan*, 125 F.3d at 1440 (citing *MacGregor*, 786 F.2d at 1053).

Dr. McCreadie provided a medical opinion in a Mental Residual Functional Questionnaire ("MRFQ") completed May 16, 2012, 2012 (R. 428 – 429 [SSA Ex. 9F]).[8]  The ALJ summarized the MRFQ as follows:

> On May 16, 2012, Dr. McCreadie completed a Mental Residual Functional Questionnaire, diagnosing the claimant with PTASD, severe anxiety, panic attacks, and depression.  She found that the claimant experienced a moderate estimated restriction of activities of daily living; marked estimated difficulties in maintaining social functioning; frequent estimated deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely and appropriate manner; and repeated (3) expected episodes of decompensation in work or work-like settings.  Dr. McCreadie further found that the claimant experience [sic] marked limitations understanding, carrying out and remembering instructions.  She experienced moderate limitations responding appropriately to supervision and coworkers.  She experienced a marked limitations [sic] responding appropriately to customary work pressures, and moderate limitations performing simple tasks and repetitive tasks.  She experienced a marked limitation completing work related activities in a normal workday or workweek.  She further indicated that the above

---

[8] Milne asserts no claim of error regarding the ALJ's analysis of her physical impairments.

limitations lasted or could be expected to last for 12 months or longer. She did not feel that alcohol/substance abuse was material to the functional restrictions in this form. The earliest dated that the description of symptoms and limitations in the questionnaire applies was listed as December 24, 2008. She listed side effects from medication as drowsiness and possibly blurry vision (Exhibit 9F).

(R. 24).

As the ALJ acknowledged in his decision, Milne had "seen Dr. McCreadie for close to five years for posttraumatic stress syndrome (PTSD) and depression," seeing her "every two to three months" during that time. (R. 22 – 23). The ALJ was also presented with "[m]edical records" from Dr. McCreadie "from November 9, 2009 through February 3, 2014." (R. 25 (citing SSA Exs. 5F, 6F, 14F, 15F, 17F, 18F, 19F, and 21F)). However, the ALJ considered only Dr. McCreadie's brief, one-page April 26, 2012 treatment note (R. 422 [SSA Ex. 6F]) indicating "that the claimant's visual acuity was 20/70 in right eye and 20/50 in left eye…" (R. 25). The rest of Dr. McCreadie's "handwritten treatment notes" were dismissed by the ALJ as "eligible" (presumably intending to state "illegible"). (R. 25). As for the MRFQ, the ALJ assigned Dr. McCreadie's opinion "no substantial weight," finding that it was "not consistent with the treatment and examination evidence or the claimant's post-alleged onset date of disability work history…" (R. 26).

Milne is correct that conclusory statements such as this are generally insufficient as a matter of law to satisfy an ALJ's duty to "clearly articulate" "good cause" for disregarding a treating physician's opinion.[9] *Winschel*, 631 F.3d at 1179.

---

[9] *See Perez v. Comm'r of Soc. Sec.*, 625 F. App'x 408, 417-18 (11th Cir. 2015) (per curiam) (unpublished) ("[T]he ALJ stated Dr. Hasbun's opinion about Perez's limitations contradicted Dr. Hasbun's own contemporaneous treatment notes; however, this statement

Coupled with the ALJ's express refusal to consider a significant portion of relevant record medical evidence, the Court readily concludes that "it is impossible … to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (quotation omitted).[10]

---

was conclusory, because the ALJ did not identify any contradictions. The ALJ listed several medical findings after making this statement, but those findings all came from consulting the report of the examining physician, Dr. Meruelo.  To the extent the ALJ relied upon a purported contradiction between Dr. Hasbun's treatment notes and assessment of Perez's abilities, the explanation is insufficient.  *See Phillips*, 357 F.3d at 1241."); *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012) ("[C]onclusory statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion."); *Wright v. Colvin*, Civil Action No. 14-00465-N, 2016 WL 796098, at *6 (S.D. Ala. Feb. 26, 2016) (slip copy) ("The ALJ assigned 'no substantial weight' to the opinion because it was 'inconsistent with the examination notes and reports in Exhibits B10F [R. 339–392] and B16F [R. 455–473].'  Wright asserts that this statement does not meet the requirement that the ALJ 'state **with particularity** the weight given to [Dr. Pita's] medical opinion[ ] and **the reasons therefor**.' *Winschel*, 631 F.3d at 1179 (emphasis added). The Court agrees that, standing alone, this summary citation to two exhibits, collectively consisting of over seventy pages of medical records, is insufficient, as the Court is unable to determine what inconsistencies the ALJ relied on to justify assigning less than substantial weight to the opinion.").

[10]     The Commissioner's brief also argues that the ALJ had good cause to reject Dr. McCreadie's opinion because (1) she is a "family medical practitioner" and not a mental health specialist, (2) her opinion was conclusorily rendered using a "circle-the-answer" form, and (3) she only answered "possibly" when asked if a psychological evaluation was obtained.  While those are all relevant considerations in weighing medical opinions, *see Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory."); 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."), the ALJ did not "clearly articulate" any of them as a basis for rejecting Dr. McCreadie's opinion, and this Court is forbidden from supplying *post hoc* reasoning for an ALJ's decision. *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. Dec. 5, 2011) (per curiam) (unpublished) ("The Commissioner argues that Dr. Janush's opinion was rendered two years after Dempsey's last insured date and there is no specific medical evidence that Dempsey had mental limitations during the period she was insured.  However, the ALJ did not offer this explanation in his decision. We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.' *See Owens*, 748 F.2d at 1516."); *Hubbard v. Colvin*, 643 F. App'x 869, 872-73 (11th Cir. 2016) (per

Alternatively, remand is also appropriate because Milne was prejudiced by the ALJ's failure to attempt to re-contact Dr. McCreadie before disregarding the bulk of treatment notes as illegible.

> The ALJ has the duty to develop the record fully and fairly. *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999). The ALJ must inquire into all relevant facts, even in cases where the claimant is represented by an attorney. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981).

> …Treating physicians should be re-contacted when the evidence from that physician is insufficient to determine whether the claimant is disabled. *Cf.* 20 C.F.R. § 404.1512(e). To determine whether remand is necessary, [a c]ourt must decide "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala,* 44 F.3d 931, 935 (11th Cir. 1995) (internal quotation marks omitted).

---

curiam) (unpublished) ("Despite identifying multiple 'careless' errors in the ALJ's opinion, the district court relied on Hubbard's work history, 'along with his ability to perform basic personal tasks like driving, paying bills, and performing self-care functions,' to affirm the ALJ's decision … [I]n relying on evidence of Hubbard's ability 'to perform basic personal tasks,' the district court affirmed based on its own post hoc rationale. However, we decline to affirm using reasoning that 'might have supported the ALJ's conclusion' but was not offered by the ALJ himself. *See Owens v. Heckler,* 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)."); *Tavarez v. Comm'r of Soc. Sec.,* 638 F. App'x 841, 849 (11th Cir. 2016) (per curiam) (unpublished) ("[W]e conclude that the ALJ's clearly articulated grounds for his decision to discredit Tavarez's medical opinion evidence are not supported by substantial evidence. *See Winschel,* 631 F.3d at 1179. To the extent that the Commissioner identifies other record evidence that supports the ALJ's decision, we do not know whether this evidence formed the basis of the ALJ's determinations, and we will not affirm 'simply because some rationale might have supported the ALJ's conclusions.' *See id.* at 1179.").
The Commissioner also appears to argue that any error in rejecting Dr. McCreadie's opinion was harmless because certain parts of her opinion were the same as those of examining psychologist Dr. Kenneth Starkey, whose opinion the ALJ assigned "significant weight" (R. 25), and because the RFC accounts for those portions of Dr. Starkey's opinion that are similar to Dr. McCreadie's. While true that Dr. McCreadie and Dr. Starkey agreed that Milne had marginal/marked limitations in her ability to work with supervisors, coworkers, and the general public, and to deal with common work place pressures, Dr. McCreadie assigned additional marked limitations to other abilities that Dr. Starkey deemed "adequate." Moreover, Dr. Starkey opined that limitations might improve with abstinence from addictive medications and substances, while Dr. McCreadie opined that she "did not feel that alcohol/substance abuse was material to the functional restrictions listed in" her MRFQ. (R. 24).

*Prince v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 967, 971–72 (11th Cir. 2014) (per curiam) (unpublished).  *See also Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008) (per curiam) (unpublished) (similar).

The ALJ's failure to seek clarification from Dr. McCreadie on her notes clearly prejudiced Milne.  Dr. McCreadie was the only treating source to provide a medical opinion regarding Milne's mental impairments, and her treatment notes spanned most of the period between Milne's alleged disability onset date and the date of Milne's administrative hearing.  As documented in the ALJ's decision, the only other objective medical evidence related to Milne's mental impairments consisted of treatment notes documenting sporadic visits to various healthcare providers.  The ALJ did not identify what part(s) of these other records were so inconsistent with Dr. McCreadie's opinion that the ALJ felt justified in disregarding it, and the undersigned's review of the ALJ's discussion of this evidence reveals nothing overly convincing.  The ALJ's assertion that Dr. McCreadie's opinion was also inconsistent with Milne's "post-alleged onset date of disability work history" is equally unconvincing, given that this work history consisted solely of babysitting her niece's two year old child three days a week for approximately six hours at a time, a job which lasted between six months and a year (the ALJ's decision is inconsistent in stating how long).  The ALJ's assignment of "no significant weight" to Dr. McCreadie's opinion also left him free to assign greater weight to the less severe opinions of one-time examining psychologist Dr. Kenneth Starkey and a non-examining state agency psychologist.   Further demonstrating how the ALJ's

disregard of Dr. McCreadie's treatment notes prejudiced Milne, the ALJ expressly decried "the paucity of medical evidence," "the overall lack of persistent and regular treatment," and the "wide gaps between treatment visits," finding it was "reasonable to assume that if the claimant were experiencing physical and/or mental difficulties to a disabling degree, she would have presented to her physicians for ongoing treatment." (R. 27).

Accordingly, the Court **SUSTAINS** Milne's claim of error and finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED**.   Milne conclusorily suggests that this case "should be reversed and the Plaintiff found disabled."  Generally, however, remand to the Commissioner for further proceedings "is warranted where the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).   This Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Id.  See also Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts…The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982.").

Here, remand is being ordered largely because the Commissioner did <u>not</u> consider all of the essential evidence. Because Milne's claim of disability appears to rest largely on the opinion of Dr. McCreadie, and because the ALJ may still be justified in assigning it less than substantial or considerable weight, the cumulative effect of the evidence currently does not establish disability without any doubt.[11]

Thus, the Court will instead reverse and remand this action to the Commissioner for further proceedings. On remand, if the Commissioner again decides to assign less than substantial or considerable weight to Dr. McCreadie's opinion, she must clearly articulate the reasons for doing so, and those reasons must constitute "good cause." *Winschel*, 631 F.3d at 1179. Additionally, if the Commissioner concludes that she is still unable to decipher Dr. McCreadie's treatment notes, the Commissioner must make a reasonable effort to recontact Dr. McCreadie to obtain additional evidence or clarification.

---

[11] *Cf. Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."); *Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

## IV.    Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued November 5, 2015, denying Milne's applications for a period of disability, DIB, and WIB is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this decision.  This remand under sentence four of § 405(g) makes Milne a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), should Milne be awarded Social Security benefits on her applications following this remand, the Court hereby grants Milne's counsel an extension of time in which to file a petition for authorization of fees under 42 U.S.C. § 406(b) until thirty days after the date of receipt of a notice of award of benefits from the SSA.[12]  Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary."  If multiple award notices are issued, the time for filing a § 406(b) fee petition shall run from the date of receipt of the latest-dated notice.

---

[12] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 2nd day of November 2016.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**